IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Cargill, Incorporated,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Dewitz Feedlot Inc.<br><br>　　　　　　　　Defendant. | Case No.<br><br><br>**COMPLAINT** |

Plaintiff Cargill, Incorporated ("Cargill"), for its Complaint against Defendant Dewitz Feedlot, Inc. ("Dewitz"), states and alleges as follows:

### Nature of the Action

1. This is a breach-of-contract action.

2. In March 2020, Dewitz and Cargill entered into a commodity swap agreement, a kind of derivative contract. Pursuant to this agreement, Dewitz and Cargill entered a series of "swap transactions," whereby Dewitz and Cargill agreed to exchange cash flow depending on the market price of an underlying commodity (e.g., Live Cattle or Soybean Futures) at an agreed-upon date. The parties used the swap agreement to manage swings in the market and lock in a price for the underlying commodity. The parties understood that, depending on market-price fluctuations, each swap transaction could require Cargill to pay Dewitz (or Dewitz to pay Cargill).

3. The swap agreement also required Dewitz to keep a minimum amount of collateral in its account.

4. In October 2020, Dewitz's collateral account fell below the required minimum threshold. And, as authorized by the agreement, Cargill asked Dewitz to deposit additional funds to meet its collateral requirements.

5. Dewitz refused and, instead, demanded that Cargill "liquidate" all its open swap transactions, thus, locking in its gains or losses as of that date. Cargill unwound and liquidated all Dewitz's open swap transactions, as Dewitz had requested, and issued an invoice for $367,575.52—the net amount that Dewitz owed Cargill.

6. Dewitz refused to pay, thus breaching the parties' contract.

## Parties

7. Cargill is a privately held corporation organized under the laws of Delaware with its principle place of business in Minnetonka, Minnesota. Cargill is a provider of food, agriculture, and risk-management products and services.

8. Dewitz Feedlot, Inc. ("Dewitz") is a corporation organized under the laws of North Dakota with its principle place of business in Steele, North Dakota. Dewitz is a large commercial feedlot and grain producer.

## Jurisdiction and Venue

9. Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(2), because the matter in controversy exceeds $75,000, exclusive of interest and costs, and Cargill and Dewitz are citizens of different States.

10. This Court has personal jurisdiction over Dewitz because it is a North Dakota corporation.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Dewitz resides in this judicial district.

## Factual Allegations

*Overview of Over-the-Counter Swaps and Relevant Terms*

12. There are many factors that affect revenue in farming, including changes in the weather, equipment breakdown, changes in government policies, and general market volatility.

13. To minimize some of these risks, commercial farmers may employ different investment tools, including entering derivative contracts to manage price swings in the market. A derivative contract is an investment that aims to reduce the risk of an adverse price fluctuation.

14. One example of a derivatives contract is an over-the-counter swap agreement. Generally, a swap transaction allows parties to exchange (or swap) cash flow based on the market price of a related asset or commodity. A swap transaction is considered "over-the-counter," when the transaction is not traded on a centralized

exchange—e.g., the Chicago Mercantile Exchange ("CME") or the Chicago Board of Trade ("CBOT")—but is a customized deal between two parties that incorporates, by reference, the commodities prices set by a formal exchange.

*Cargill and Dewitz Execute A Master Over-the-Counter Swap Agreement*

15. On or about March 10, 2020, Cargill and Dewitz entered into a Master Over-the-Counter Swaps Agreement ("Master Agreement"). Attached as **Exhibit A**, and incorporated herein by reference, is a true and correct copy of the Master Agreement.

16. Pursuant to the Master Agreement, Cargill and Dewitz agreed to enter a series of swap transactions (each a "Transaction").

17. Under Section 1.2 of the Master Agreement, each Transaction was evidenced by a confirmation letter ("Transaction Confirmation"), reviewed and executed by both Cargill and Dewitz. And each Transaction Confirmation set forth the precise details of each Transaction, including the referenced commodity (e.g., Live Cattle Futures), the reference Market (e.g., CME), the calculation date, and the formula for how cash flow would be exchanged between Cargill and Dewitz.

18. For example, the Transaction Confirmation for Trade Reference ███████████ between Cargill and Dewitz, had the following key terms:



19. █████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████.

20. █████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████.

5

21. Section 7 of the Master Agreement set forth each party's payment obligations under the agreement, and the terms by which outstanding transactions could be liquidated and terminated.

22. Section 7.1 provided that, in the event of a liquidation, a settlement amount must be calculated representing the losses or gain resulting from liquidation, as well as the losses and costs incurred as a result of maintaining, terminating, obtaining, or reestablishing any related trading position. The settlement amount, which would be calculated on the date liquidation occurred, would represent a single netted amount, from all open Transactions, payable by one party to the other and would be offset by any collateral held.

23. The Master Agreement required Dewitz to maintain minimum collateral thresholds, as set forth in the Collateral Requirements Exhibit. Specifically, the Master Agreement required Dewitz keep a minimum threshold amount of ▮▮▮▮ in its account. And, on any day the amount in Dewitz's account fell below this minimum collateral threshold, as estimated by Cargill in good faith and in a commercially reasonable manner based on the fair market value of the account, Cargill was permitted to demand that Dewitz deposit additional collateral to its account.

24. Pursuant to the Master Agreement, Cargill and Dewitz entered into more than 30 separate Transactions.

25. Some of these Transactions netted gains for Dewitz, others netted gains for Cargill.

*Dewitz Request to Liquidate*

26. On October 15, 2020, Dewitz's collateral account fell below the minimum collateral threshold.

27. As a result, Cargill asked Dewitz to deposit an additional ▮▮▮▮ to its collateral account.

28. Four days later, when Dewitz had not yet made any collateral payment, Cargill contacted Dewitz about its outstanding payment obligation.

29. Rather than make payment, Dewitz requested that Cargill liquidate all of its open Transactions.

30. On October 19, 2020, as requested, Cargill liquidated all Dewitz's open Transactions.

31. As set forth in Section 7.1 of the Master Agreement, Cargill calculated the settlement amount representing the losses or gains which occurred because of the liquidation and offset that amount by the collateral in Dewitz's account. Attached as **Exhibit B**, and incorporated herein by reference, is a true and correct copy of the Settlement Invoice.

| Trade Reference Number | Settled Amount | Remaining Balance Due |
|---|---|---|
| ▮ | $19,995.00 | $19,995.00 |
| ▮ | $148,452.00 | $148,452.00 |
| ▮ | $281,549.00 | $281,549.00 |
| ▮ | $48,485.00 | $48,485.00 |
| ▮ | $15,751.00 | $15,751.00 |
| ▮ | $6,301.00 | $6,301.00 |
| | Subtotal | $520,533.00 |
| | Collateral balance | -$152,923.00 |
| | Collateral interest | -$34.48 |
| | **Net Total** | $367,575.52 |

32. On October 22, 2020, Cargill issued a settlement invoice to Dewitz for $367,575.52, representing the amount owed by Dewitz following liquidation.

33. Section 7.1 of the Master Agreement required Dewitz to pay the full settlement amount within one business day of liquidation.

34. Dewitz did not pay the settlement amount within one business day as required.

35. On November 17, 2020, Cargill sent Dewitz a notice of default, demanding that it pay the full settlement amount of $367,575.52 by November 25, 2020.

36. Dewitz refused to pay.

37. On February 16, 2021, Cargill sent another notice to Dewitz, demanding that it pay its outstanding balance as required by the Master Agreement.

38. Dewitz ignored Cargill's demand.

39. To date, Dewitz has not paid Cargill the $367,575.52 it owes.

## Count I
## BREACH OF CONTRACT

40. Cargill incorporates Paragraphs 1-39 by reference.

41. The Master Agreement and associated Transaction Confirmations constitute a valid and enforceable contract between Cargill and Dewitz.

42. Cargill has performed all of its duties under the contract.

43. Dewitz breached the Master Agreement and the Transaction Confirmation by failing to make full and timely payment as required, thereby causing Cargill damages.

## PRAYER FOR RELIEF

WHEREFORE, Cargill respectfully requests judgment in its favor and against Dewitz as follows:

1. For damages in the amount of $367,575.52;

2. For reasonable attorneys' fees and costs, as expressly permitted by the Master Agreement;

3. Prejudgment and post-judgment interest; and

4. For such further relief as the Court may deem just and equitable.

| | |
|---|---|
| Dated: March 24, 2021 | **PEARCE DURICK PLLC** |

/s/ *Zachary E. Pelham*
Zachary E. Pelham, ND#05904
314 E. Thayer Avenue
P.O. Box 400
Bismarck, ND 58502-0400
zep@pearce-durick.com
(701) 223-2890

**GREENE ESPEL PLLP**

X. Kevin Zhao, Reg. No. 0391302
　*Pro Hac Vice Application Pending*
Amran A. Farah, Reg. No. 0395354
　*Pro Hac Vice Application Pending*
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
kzhao@greeneespel.com
afarah@greeneespel.com
(612) 373-0830

*Attorneys for Cargill, Incorporated*